This afternoon is case number 417-0335, Key Outdoor, Inc. v. City of Springfield. For the appellant, we have Mr. Ackerman. And for the appellee, we have Mr. Rice. You may proceed, counsel. I'm Jim Ackerman. I represent Key. I know you know that. This case is sort of unusual, I thought. But anyway, the judge in it ruled, Judge Schmidt ruled that there was a license. And he said, and his ruling suggests that he thinks that's roughly the end of the inquiry. And I mean, I don't, I'm not here to contend that this was not a case where my client, the billboard company, started out with a license. I think it would be unusual for a billboard company to sneak onto a piece of property and stick a billboard up and run away. And what they do is they negotiate with whoever owns the property and they get a license before they start. But that concession, then, I think that's likely. You're saying that there was original permission. I think there must have been original permission from somebody at some point, because I think it's very unlikely a billboard company ran in there and just put a billboard up. Well, then how do you get around that? If the site is erected by permission, how do you establish the easement? That's what I was going to talk about. Probably something to do with the rent. What's that? Probably something to do with not paying the rent. Well, I think that's a big issue. I mean, we have, there's three options, right? There were two licenses of record in this case. One of them's called SBT-476 and one's SBT-694. It strikes me that it's most likely that it was SBT-476. And that, we got a letter in October from TDI that says that's going to be terminated January 1st of 92, right? And that's the end of that, excuse me, that was May 1st of 92. And that's going to be the end of the permission for that and you're going to have to reapply. And the reapplication part is in the September letter. And that was never renewed. Well, there's no evidence that it was renewed and I don't think it was, right? So after that date, possession of that property is adverse, assuming that's 476. If it's 694, it expired January 1st of 92. And after that date, it is no permission. And the permission to hold the property after that is adverse. The clock starts running at that point is what you're saying. Correct. Right. And on both of those scenarios, the clock expired before the city ended up with putting their billboard on there or even getting permission and having their license, which stated May 6th of 1992, excuse me, 2012. So under either of those two scenarios, we had it before they made an agreement with Illinois Central. Okay? So those are two scenarios by which I think it's possible theoretically that, you know, that that's one way that it could happen. The other one is we have, we're wrong, right? And we don't know which, how the license came into being or anything about it, right? And if that's true, there's a presumption that applies. And that presumption says that if it's adverse, excuse me, let me get that, open, uninterrupted, continuous, and exclusive, then the clock starts running. Now, my clients had a billboard on that property since 1977, including predecessors in interest. And I'm going to just say my client. I'm not going to talk about predecessors in interest. So since 1977, there's been a board on that spot. There's been no rent paid since December of 91. Again, if that's when you start the clock running, then my client had it in December of 2011. Again, before they got entered into a lease with Illinois Central Railroad to put their board up and to throw us out basically. So those are the three scenarios. And I think under any of those scenarios, my client had adverse possession before they got their lease on the property. I want to highlight that there's two railroads in this case. One of them is Illinois Central, and that's the one that they got their lease from. In May 6, 2012, the one that my client negotiated with is Southern Pacific, completely unrelated as far as I know to Illinois Central. There's no evidence whatsoever that Southern Pacific transferred this property to Illinois Central. So under any of these scenarios, my client wins as of the latest date would have been May 1, 2012. My client had 20 years of adverse possession. The court also said that refusal to pay rent is immaterial. This is a billboard. And to me, if you have a billboard on a piece of property, it is normal in the business, and it is, I think, normal for people to assume and understand that billboards pay rent to the landlords, to the person that owns the property. And if not, the person that owns the property would say, get off my property, right? Because who wants a billboard on their property unless somebody is there to pay them for it? And so that's, I think, what happened. I mean, I think Illinois Central probably owned it. It's just a guess. I don't know that. I don't think the evidence is clear on that. But they slipped on their rights, right? Because they should have noticed that there was a billboard on their property and nobody is paying them rent. But they didn't. And so how do you deal with that? I think they have an obligation to kick somebody out. And if they don't do it, they don't have to do it quickly. They just have to do it within 20 years. And in this situation, they failed to do it within 20 years. And so my client has a right to have an easement on that property. My client testified. My client, the president of my client, I should say, Bob Dahl, testified this is not unusual. He said it's not an unusual occurrence for the railroads to lose track of their properties. And that's why they have these firms like TDI who does the leases for these properties. And apparently there's a mix-up in who owned it. And so my client said, well, to heck with it. We'll just leave our sign there and not pay anybody. Better for them. They get rent without having to pay any rent. And so they ended up owning it for 20 years. And so my client is entitled to a judgment for adverse possession. The other issue, I suppose. Explain to me again why that is necessarily adverse as compared to permissive. To put a billboard on someone's property? I mean, I suppose it's theoretically possible that somebody could say, yeah, you can have a billboard on my property. Well, you're suggesting that nobody knows who actually owns it for sure. So. There's no evidence to that effect. I mean, we've got Illinois Central coming in saying, well, we've got a lease that we gave to them after we've had it for over 20 years. So what are we going to do? Assume that a railroad company was happy to have a billboard on their property without being paid rent? I mean, that's kind of what you're suggesting, right? Yeah, we don't care. I'm not trying to suggest anything. But that's what the question suggests. And I think that's what their argument is, right? Well, there's a billboard there. They must have noticed it was there, and they must have said, well, hey, we don't care, right? Because permissive, right? We're just going to ignore it. But, I mean, in all these cases of adverse possession, somebody is using it adversely against the other person's rights, right? And I think in pretty much all these cases, somebody knows about it. Counsel, I'm following your argument, and parts of it make really good sense to me. But I guess I come back to this. If there was an original license, which would be permissive, correct? I think they had to pay rent on it, yeah. Because my wife is paying rent, yeah. Why would the discontinuation of paying rent convert it from permissive to adverse? Well, one, because under the terms of the agreement, my client had to pay rent. That's one, right? And so by not paying rent, it's kind of like saying, well, I'm just going to live here to a living, right? I don't think you can do that without getting evicted. Is there a case that says once there's a license established, which establishes the permissiveness of the use, that a failure to pay rent converts it from permissive to adverse? I don't have a case that says failure to pay rent. The question is whether it's adverse, right? And that's it. And so I've got three, there's three reasons, well, there's two reasons it's adverse. One, I mean, the license expired and was canceled as of the latest could have been May 1, 2012, excuse me, 1992, by its terms. And that's set forth in the record, right? And so after that, there's no evidence my client had any right to be there. And this isn't like, you know, neighbors where, you know, we're buddy-buddy and we're friends, right? This is a railroad company and a billboard company. And they had a license that canceled. Now, what else can you do? You know, I mean, what else is my client supposed to do? Send letters? We hereby possess this adversely, right? I mean, there's not much more they can do other than keep their billboard there, not pay anybody rent, despite the fact that the lease is canceled. Right? I mean, what else do you want? I mean, you've got written documents drafted probably by lawyers, I assume, right? And they say that it expires in 1992. My client says, okay, to heck with you. We're not going to pay you rent. We're going to stay there. And, you know, probably what should have happened is Illinois Central or whoever owned it should have come to them and said, hey, either pay us rent, get a license, apply for a license, or get off. Right? But they slept on the rights. And that's what happened. And whoever owned that property slept on the rights for over 20 years. And my client adversely possessed it because they stuck a board on it and didn't pay him. I don't know what else you can do. They left the board on it. Left the board. Right. They had a board on it, left the board on it, and didn't pay anybody rent after the license canceled. And or somebody else owned it that didn't know it. Somebody slept on the rights. Do you have a case that supports your position? There's a lot of cases. There's a case that says that a license can terminate, if that's what you're wondering. That case is called – hold on, let's write the name of the case. I guess I'm thinking about the notion that the failure to pay rent is not necessarily enough to demonstrate adverse possession. I don't have a case that says failure to pay rent is adverse possession. But there's a number of cases I cite that say if you do something inconsistent with the owner's property, like put up a fence or things like that, that that is sufficient to be adverse. My client put a billboard, had a billboard on the property, put it on however you want to look at it. Walter v. Jones is the one that says you can take a license, and if you become adverse to that license, that that's adverse. And so, for instance, in that case, a guy had a fence. And that fence was with the neighbor. And he said to the neighbor, do you want us to do a survey? Nah, don't worry about it. You're friends. And the guy married his daughter. Right? So they're pretty tight. And so then what happened was they did a survey. Somebody else bought it. Everybody got mad at each other. And so there was a fence there still. And there was a survey, so everybody knew what it was. And so the court held that that was adverse possession. Because there was a fence there. Even originally, there was a license and it was an agreement. Or it wasn't a license, it was permission. It wasn't an agreement. And once they found out there was a survey and they knew where it was, it's adverse. Right? Well, that's what we have here. I mean, there's no question that my client didn't own that property, had a billboard on it, the license expired, and my client never paid rent. That's adverse. I don't know how much more adverse you can get than having a billboard on a piece of property and not paying anybody for it. They should have evicted him. He slept on the rights. So, thank you. Oh, one more thing. If you don't think I'm right, you know, these cases say that, you know, these are roughly questions of fact, right? And so I think it's reasonable to remand for a trial in the alternative. Anyway, thank you. Thank you, counsel. You may proceed, counsel. Thank you. May it please the Court. Opposing counsel. My name is Nathan Rice, and along with Steve Braun, we represent the city of Springfield. Your Honors, we're here today to ask that you affirm the ruling from the trial court which granted summary judgment in the city's favor. As the trial court correctly found, this is a case of permissive use, not adverse possession or a prescriptive easement. At its core, the plaintiff had permission to place its billboard at this location, and the true owner, which is the railroad that the city of Springfield contracted with, subsequently revoked that permission in 2012. Plaintiff's counsel today has presented an argument that that license was canceled in that letter. The city respectfully disagrees and would argue that that license was actually transferred to the subsequent purchaser of that railroad company. There is no indication from our standpoint that that license was actually terminated pursuant to the 1992 letter. That being said, permissive use, assuming it is not terminated, cannot automatically ripen to a prescriptive easement. That's the core issue here today. A license is revocable at any time between the parties benefiting from that license. The trial court found this to be a license. If you look at why the trial court found this to be a license, it is because the premises was used for a specific purpose. It continued to be used for a specific purpose after there was that change in ownership or whatever that circumstance was in 1992. I understand it's a bit of a convoluted fact pattern, but at its core, the use never changed. It was never expanded upon, and that license was not revoked until 2012. Now, the plaintiff would like to suggest that there is a prescriptive easement here involving adverse possession, continuous possession, exclusive possession, and it's inconsistent with the claims or titles of the true owner for a requisite period of time. That's a heavy burden of proof to carry for the plaintiff here. It has to be done so with clear and distinct evidence, which the cities of the position, that simply did not occur. For example, on the element of being adverse. Permissive and adverse can't exist in the same universe. They are counter each other. The plaintiff has attempted to show adverse nature through inadmissible hearsay documents such as a letter where a foundation would not be able to be provided at trial. Furthermore, these documents are not even certain to pertain to the property in question. So that presents an issue that it's not clear and distinct evidence. Furthermore, as the justices hit upon, payments enough are not a demonstration of an adverse nature. Had there been a demand letter sent or a collections action started and the plaintiff said, I'm not going, that would be of an adverse nature. Instead, the plaintiff got a bargain and he benefited. The plaintiff benefited from this. If anything, it's evidence of perhaps bad business management, but it's not an example of adverse possession. And furthermore, I will argue on this point, that the billboard remained in the same steps it had been in since 1977. At no point in time did it change the character or use of that property from its original permitted use. So there's no expansion. So as a result, you cannot argue that it's been expanded upon to an adverse nature. And the plaintiff has mentioned something of a rebuttable presumption. Under the case law presented, the rebuttable presumption of an adverse nature only applies if the origin of the easement is unknown. It has been admitted here today that there was a permitted use and an agreement in place for that billboard to be erected in roughly 1977. Furthermore, it does not say the other elements of a prescriptive easement need to be satisfied as well. That's not the case here. Well, when the license is not renewed, doesn't that make the possession of the property in question adverse? It does not, in my opinion. And why not? Well, I believe in this particular fact pattern, I believe that the license was transferred to the subsequent owner in this nature. But also, there's nothing that would indicate that the license was actually terminated. The adverse nature on that is entirely dependent on the fact of a failure to pay rent, which does not appear to be. The license didn't have a termination date. The original license document from 1977 is lost in the annals of time. So we don't know whether there was a termination date, because the letters seem to suggest that the license was terminating and would require renewal. Based on the facts and evidence in the record, there is no record of the original agreement from 1977 indicating the terms of termination of the license or anything of that nature. But based on the character of that letter and subsequent letters and the most recent letter from 2012 terminating the license, it would give the impression that the railroad was with the understanding that there was a valid agreement the entire time and only discovered that there wasn't an agreement in place until relatively recently. And at that point, the billboard was torn down and the city put up its billboard in its place. So based on the records and evidence, the railroad was under the impression that there was a valid agreement in effect. Backtracking just a little bit, the rebuttable presumption of the adverse element of a prescriptive easement being filled also only applies if the other elements of a prescriptive easement are filled. Here, in two particular circumstances, under a claim or title inconsistent with the owner, I do not believe that has been filled. And that is on the basis of the billboard remained a billboard and became a billboard. It's never changed. The use has stayed consistent since 1977. Also, the element of a requisite period of time. There are no facts or evidence in the record indicating that the predecessor interest failed to pay rent other than hearsay statements by the plaintiff. There is nothing in there that indicates that it's been for the 5, 10 years or whatever it may be leading up from 1992, I believe, to 1997, that there was a failure to pay rent other than a statement by the successor interest. That's not clear and distinct evidence of the requisite period and adverse possession even if this court were to find that the failure to pay rent is adverse in nature. And finally, one other point. Necessary parties. The plaintiff claims this is an action for ejectment and trespass. In the alternative, if the court does not believe that permissive use terminates this, it stands to logic that the railroad is a necessary party in this argument because even though it is an ejectment action brought by the plaintiff against the city, this will ultimately adversely impact the property rights of the railroad that owns this property. It's seeking to establish a prescriptive easement against a party who's not even involved in this case. So I would put forth in the alternative if the court were to find that permissive use does not defeat the plaintiff's claim, if the claim of a license does not defeat the plaintiff's claim, if the court were to find that a prescriptive easement has been met. In the alternative, a necessary party in the railroad would need to be present for this because they are going to be greatly impacted and their property rights will be greatly impacted. So unless there's any other questions, the city would ask that you affirm the surrogate court's judgment and I yield the rest of my time. Thank you, Mr. Rice. Thank you very much. Any rebuttal, Mr. Ackerman? The letter that we think is the right license says, here is a schedule indicating the effective cancellation date of each license TDI, and it has both cancellation dates. That's a cancellation and there's no evidence of anything after that. So after that, there's no permission to be on the property. These are business people. This is not buddies next door like in most of this ever-possession cases. The city must argue that, well, this was an unfair agreement in 1977. That's fine with me. If they want to argue that, that's just wonderful. All of a sudden, when they argue that, I get a presumption, a rebuttable presumption, that as long as there's open, notorious, continuous possession of this property, and adverse, that there's a presumption of adversity. So if they want to walk down that peat patch, they can, but they lose under that presumption. Because if the origin of the easement is unclear, or the origin of how we got there is unclear, which they're saying, then we win on the presumption because there's no way there's any evidence to the contrary. The business records of my client and its predecessor in interest are business records. They are clearly admissible into evidence, and despite what they say, business records come into evidence. We've argued about this, about what the mayor assured them. If they wanted to bring the railroad in, they could have agreed to go. The railroad has the right to come in. If they want to, they didn't. They're in the privity of contract. We can make it a total. I think it's pretty clear in this situation. My client had a license. Arguably not. I don't think it's crystal clear, but TDI canceled these leases, and after that, nonpayment of rent with a huge billboard on the property is adverse. I don't know how you get around that. These licenses, no matter which date you use, whether it's the latest would have been May 1, 1992, my client had it by adverse possession before their lease was signed. They have no right to take my client's sign off and take it down. So I would ask that you reverse or send it back down to the property. Thank you. Thank you, counsel. We'll be in recess. This matter will be taken under advisement.